May it please the Court, Keith Borhon, Supervising Deputy Attorney General, for Respondent Appellant. A rule of federal law that is inapplicable to the states cannot qualify as clearly established law within the meaning of 28 U.S.C. § 2254 D.I. In accordance with this rule, we ask this Court to reverse the judgment of the District Court, which holds to the contrary, because as the Supreme Court has held in binding authority, reliance upon federal law that does not even purport to interpret any provision of the Constitution is alone enough, and that's the words of the Supreme Court in Packer v. Early, alone enough to defeat a claim that its application to state court proceedings is clearly established. As Packer states, such authority is off the table as far as § 2254 D.I. is concerned. And there is no dispute here, or there should not be, that the rule of Harrison v. United States is a rule created by the United States Supreme Court in the exercise of its supervisory jurisdiction over federal courts in its construction of the McNab-Mallory rule. There is no dispute here. Excuse me. No, go ahead. There's no dispute here. There is a dispute, but go ahead. Or should not be. That the McNab-Mallory is inapplicable to state courts and inapplicable, as the Supreme Court has held, to arrests made on state charges. And therefore, the California Court of Appeal would not have felt constrained in its construction of that rule. I sure would feel a whole lot better about your argument, counsel, if the California courts had acknowledged the Harrison case. Well, that's true. They did not acknowledge it, but I don't think they were required to on the ADPA.  The California Court of Appeal is clearly trying to work honestly and fairly through the issues. It just looks like they overlooked Harrison, and it certainly looks like if Harrison had been drawn to their attention, that they would have dealt with it straight up and perhaps resolved the case differently. Maybe they would have distinguished it on the grounds that the state urges today. But it doesn't look like something that they would have willfully ignored if it had been called to their attention. It looks like it just wasn't. Because, again, they deal very conscientiously, I think, with the other Supreme Court cases. That is true, but I think there are two responses. First, I would direct the Court's attention again to Early v. Packer, where Early states that state courts are not required to cite Supreme Court authority. All they required under 2254d.1, they're not required to cite or even be aware of it so long as neither the state court's or its result contradict the applicable authority. Well, it's clear that whether or not it's binding authority, the state court, as Judge Leiby says, completely ignored Harrison, right? Well, you can't say that. You can't what? I don't know how you could say that. Well, because there's not a word said about Harrison or the Harrison principles in the opinion. Right? Well, that's exactly what this Court held in its opinion in Early v. Packer. The failure of the state court to cite certain Supreme Court authority. And the Supreme Court's per curiam opinion there responded to that, that that was not a requirement. The state court did not have that. You're addressing a different question I'm addressing. I'm not saying because they didn't discuss it all. I mean, that's the end of it. I'm just saying there's no acknowledgment in the state court opinion that Harrison or the principal Harrison in MCH even exists. That's right. That's correct. That is. I'm not saying that, you know, that's a mistake that automatically requires a reversal. So the next question is that I agree with you, even though Harrison itself isn't strictly a case. Holding that whatever happened in that case was unconstitutional, but it is based upon a constitutional principle. And the Supreme Court, when it discusses constitutional law, it cites other cases that are based on the Constitution. And the courts of appeals that have interpreted Harrison say it's obvious that it enunciates a constitutional principle. Now, are you saying that a case that enunciates if that's true, a case that enunciates a constitutional principle should be ignored because it doesn't directly involve a state? Is that your position? What happened in Harrison is it's cited in support of the fruit of the poisonous tree doctrine. The United States, its own authority in Silverthorne, which is a Fourth Amendment case. The California Court of Appeal, as we know in detail, examined the fruit of the poisonous tree doctrine as construed by the Supreme Court in Oregon versus Elstad. And held that under Elstad, the fruit of the poisonous tree doctrine does not apply to Fifth Amendment violations. It only applies to Fourth Amendment violations. In light of that, I cannot, I respectfully cannot agree with the proposition that ignored what, even if it ignored the citation, it did not ignore the reasoning. How do you deal with what the Supreme Court said in Oregon, though, about Harrison? First of all, I think that's the most difficult question in this case. Well, yes. And one, it seems to be directly contrary to your reading of Harrison, that Harrison was a nonconstitutional decision because the Supreme Court itself characterizes it as a Fifth Amendment decision. And it distinguishes Harrison from the situation in Elstad on the grounds that it was, if the prosecution has actually violated the defendant's Fifth Amendment rights by introducing an intermittent confession at trial, compelling the defendant to testify in rebuttal to the rule announced in Harrison precludes use of that testimony. I think the best instruction I could give to that is that Elstad says that the Miranda violation creates a presumption, an irrebuttable presumption for the purposes of the prosecution's case-in-chief, such that the prosecution cannot use the defendant's statements in its case-in-chief. And the language you refer to, it refers to Harrison involved a retrial and the use in the prosecution's case-in-chief of the defendant's prior testimony. Well, that's not what happened here. And perhaps that's what the Court was speaking to, that the presumption is so irrebuttable in the prosecution's case-in-chief, in the event of a retrial, you cannot use those statements. But counsel, I mean, if you have an improperly obtained confession and you introduce it in your case-in-chief, and the only reason the defendant takes the stand, and it's undisputed in this case that the only evidence before us is the defendant would not have taken the stand but for the fact that he had to explain the confession that was used, aren't you compelling him to give testimony in light of the violation of using an improperly obtained confession and how can that be used later to bootstrap a justification that, well, he confessed at trial, so it doesn't matter? You know, if it goes to the next step of a retrial, it's okay, but if you use it in his own trial to confirm the conviction, it's not? Well, the difference is, at a retrial, the defendant would have the choice whether to testify. You're saying he wouldn't have the choice in his own trial because you illegally used his confession in your case. Once you've crossed that threshold and he's been compelled to testify, doesn't Harrison stand for the proposition that that can't justify his conviction later when the confession is thrown out? The dicta in LSTAT that refers to the use at retrial, I think, would prevent its use at a retrial in the prosecution's case-in-chief. Well, I understood your argument on Harrison was that it didn't involve a Miranda Fifth Amendment violation. It involved the Mallory rule, and therefore it's limited to these statutory violations of obtaining a confession, and yet there's no way in LSTAT that they refer to the Harrison decision as that narrow. I don't even know why they have referenced it if the court thought that their decision was that narrow. Well, I think the truth is only the United States Supreme Court can tell us what they meant by what they said there. Because I think it's true, as the dissent in LSTAT by Justice Brennan points out, is that the rationales of the majority opinion and Harrison itself are completely incompatible. Okay? A lot of your brief relies on dissenting opinions. No. My point is that the rationales are completely incompatible. See, it would be impossible to say that a majority opinion would lay out a rationale and then in dicta undermine its entire reasoning. And the point that leads me to is that dicta is not controlling for purposes of clearly established law under 2254 D-1. So my argument to you is that to the extent there is any comment in LSTAT on the meaning of Harrison, it's dicta, and I ask you that it should be construed and limited to its own facts. It's pretty darn important, dicta, when the Court has to distinguish its case in Harrison from the case that's before it in LSTAT. Because one might have thought that Harrison might have dictated a different result in LSTAT. Except that it involved a violation of McNabb-Mallory rule, which we know. Well, but that's not what the Court said. The Court said, well, this was a Fifth Amendment case, but we distinguish it because that testimony was introduced at trial. But it did not actually say that Harrison is a Fifth Amendment case. Oh, it did. Counsel, let me read you the words. I'll read it to you. I have it right here. If you want to pull it out, you can follow along with me. So here is LSTAT. I am at page 316 of 470 U.S., page 316. If the prosecution has actually violated the defendant's Fifth Amendment rights by introducing an inadmissible confession at trial compelling the defendant to testify in rebuttal, the rule announced in Harrison v. United States precludes use of that testimony on retrial. I don't know how the Court could have been any plainer. Well, to me, the most important words in that sentence are the last two, on retrial. And that's the most I can tell you about that. Okay. That's the best I can give you. But the State is willing to say at this point that the Court did use the words Fifth Amendment. Yes, that's true. Okay. All right. I apologize for that. Counsel, you're down to three minutes. You may use your time any way you wish. If you wish to reserve that time for rebuttal and to respond to the cross-appeal, that would be. I would like to reserve the remainder of my time. Thank you, Your Honor. Thank you. Good morning. I'm Tracy Dressner for Petitioner Revent Lujan. I should just be quiet, but because most of my argument was already said just a few minutes ago. But I want to be clear. Early v. Packer, which Respondent cites a lot, says that a State court decision is contrary to clearly established United States Supreme Court precedent if it applies a rule that contradicts the governing law set forth in United States Supreme Court cases. And here we have Harrison saying, if a defendant testifies only after the government has illegally admitted a wrongfully obtained confession, then the same principle that prohibits the use of the confession prohibits the use of any testimony impelled from that confession. There's no language limiting that to any particular type of wrongly obtained confession. There's numerous cases that I cited in the brief where various courts of appeal have held that that includes the Fifth Amendment, including this Court in several cases. But as Judge Bybee noted, Elstad really clearly demonstrates that point by saying that Harrison was a Fifth Amendment situation. So we have a clearly established United States Supreme Court law that says that when you have wrong – when you're – they illegally use a wrongfully obtained confession, then the use of any testimony impelled from that is prohibited. And that's what we have here. Now, the issue with Elstad is it does say, okay, you can't use it on retrial. But implicit in that is that there was a reversal in a case where there was a wrongfully obtained confession, and the defendant testified. So as was pointed out earlier, how can you have a situation where you can't use the defendant's testimony at a retrial, but you could use it in the harmless error analysis as to why – whether there should be a reversal because of the use of the illegally obtained confession. I think that's a pretty straightforward application. And the State court simply got it wrong. Not only did they not mention Harrison, but they actually had said that the – that the United States Supreme Court had never said anything about derivative evidence obtained from a Miranda violation, and that Elstad was the first case where a derivative evidence rule was discussed post-Miranda. Harrison, of course, came out two years – Miranda came out two years before Harrison, so Miranda was on the books at the time the Harrison case was discussed. And as the Court said, the Mallory rule, the underpinnings of the Mallory rule were the same underpinnings of Miranda, and so we really have almost an analogous situation. I think the real issue in this case is what the remedy should be. Actually, two questions in the – two issues, and they go to both of the cross-appeal issues. One is that there are, as we know, two types of illegally obtained confessions. One is a straight-up Miranda violation, which we have here. He definitely was not – was not ever advised that he had the right to counsel before and after questioning. But we also have a second – you can have a second one that were – you have an involuntary confession. And we made both arguments, both in the state court and in the district court, and they were never addressed. In fact, the state court wrongfully said that the involuntary confession issue was never raised, and as I cited in my supplemental excerpts, it was raised numerous times in the state court. Is it something we should appropriately hear as the first instance as to whether or not it was involuntary? Nobody else has addressed it. And I think the court could either address it or it could remand to the district court for a hearing on it. It is going to be a de novo review because the state court never addressed it, and so which court does that de novo review may not make much difference. Is it necessary for us to reach the involuntariness issue if the court affirms the district court's suggestion that he could be convicted for second-degree murder? I think it does, and for two reasons. First, they have the option. We don't know what the court will do, what the district attorney would decide to do, whether they would decide to retry Mr. Lujan or whether they would drop it to a second degree. But the issue is important because if it's an involuntary confession, they can't use it at all, which means that if there was a retrial, Mr. Lujan is free to testify without being impeached with his earlier illegally obtained confession. And I think the district court didn't have that in mind when it fashioned its remedy because for some, whatever reason, this involuntary confession issue just has been sidestepped. But I think it's an important issue because if you look at it, the totality of the circumstances, again, you can force out little bits of things and you say, well, this was okay and this was okay. Look at the big picture. This was a case where he never obtained his full Miranda rights. Then he asks, can I have an attorney? And the judge and the detective doesn't really answer him fully correctly. I mean, he does, but he still doesn't say he has a right to a counsel at that moment for questioning. And then he continues questioning him after he's asserted his right to counsel. He asks him some questions about his phone call. He doesn't give him a chance really to say anything before he starts saying, starts jolling him. You can talk to us now. You can talk to us now. You can talk to us now. And then when you look at the overlay of that, the detective also knew that Mr. Lujan had gone to call his mother at home to try and obtain an attorney. That detective knew that Mr. Lujan's mother wasn't at home. He also knew, or his partner knew, that Mr. Lujan's attorney had actually already contacted the police department, had asserted Mr. Lujan's Fifth Amendment rights on his behalf, and was actually there in the police department and says nothing. Now, there's a case law that says they're not required to do that. But when you look at the big picture of the totality of the circumstances, this is not a good interrogation. And you have him, the detective, browbeating Mr. Lujan, calling him names, threatening his family, to call his family on the stand and humiliate them. Aren't these all the factual findings as to whether or not this was involuntary? And, again, my question was, why should we find it an abusive discretion not to follow the remedy posed by the district judge to allow this? Because none of this is necessary if they drop the charge to second-degree murder. Because we don't know what the court will do. Well, then shouldn't that issue be addressed when they decide it? It's a moot point if they don't retry him. If they're going to retry him, then wouldn't that be the time to address whether it's voluntary and let it come in as a motion then? Well, but you're sort of putting the carpet before the horse, because you're limiting Mr. Lujan to a possible second-degree murder when, in fact, he might have a right to a trial that doesn't involve his confession and yet involves his testimony. And then you might be able to lay a perfect groundwork for voluntary manslaughter, which this case has a lot of elements of, despite, you know, it's a disturbing case, yet when you get down to what actually happened, there is a lot of hint of voluntary manslaughter about it. And so by you foreclose that possibility, if you allow the possibility of a second-degree murder conviction without the possibility of him having the trial that he really should have been entitled to, that is one where his confession, if it was involuntary, not only couldn't be used in the case in chief, but couldn't be used as a defense. Well, then that gets to your cross-appeal, right? Yeah. I'm sorry? I said that gets to your cross-appeal. If you lose on the cross-appeal, as Judge Bentevengo said, this is all academic. That is correct. So why don't you get to your cross-appeal? Well, that's my position is the remedy was inappropriate because he's not getting a windfall, as Respondent refers to it. He's getting what the Court has said, to be back in the position he would have been.     He's getting an advantage. All right. Well, first of all, whether you said inappropriate. To me, the question is whether I guess it's illegal, but what's the standard of review on, you know, what the remedy should be in a habeas case?  I believe it's abuse of discretion. All right. So the question is, and the question is, if that's correct, was it an abuse of discretion by Judge Morrow, right, to fashion this remedy? And so your answer has to be yes, right? Why is it an abuse? It's an abuse of discretion. Is there a case that says it's an abuse? It is an abuse of discretion for two reasons. One is because the Court, in fashioning that remedy, did not address another important issue that would factor into what possible convictions could – what possible convictions Mr. Lujan could be subject to if there was a requirement. Does that mean you start with the proposition conceding that in a habeas case, if the Court finds a violation, it has the authority to decide, you know, a broad range of remedies, including, you know, we'll say a conviction on a lesser offense. Is that right? Do you agree to that? Yes, I agree broadly that they have much discretion how to fashion a remedy. I do agree with that. Including a conviction on what you might call a lesser offense. Is that right? In other words, the Court hears, well, you know, something went wrong with the trial, I'm going to issue a habeas, but the habeas is only going to be that he gets convicted of whatever it is, second degree or manslaughter. The Court could have said manslaughter, right? And if the Court had said it gave him the option of reducing it to second degree or voluntary manslaughter or voluntary manslaughter, I would not be arguing this. But this – because voluntary manslaughter is still a viable option in this case, by limiting the option to second degree, it deprives Mr. Lujan of all of the possible conviction options that he would have had had he not had an illegally obtained confession. My little problem with that is that we have to look at the trial that happened and the remedy here if there was the violation under Harrison of – and we take out both the confession and his testimony, which he claims he would not have given, but for the use of his confession, then the district judge looked at the balance of the record and felt that there was adequate evidence to support what would have been the lesser charge of second degree murder. There could not have been, in that hypothetical situation, a lesser charge of voluntary manslaughter unless your client took the stand and testified, in which case it negates your whole argument that he would not otherwise have testified but for the admission of his confession. So I'm kind of in a rock-and-hard place for you here as to you don't really get your cake and eat it, too. I genuinely agree. And the case is much more difficult if we don't have the involuntary confession issue. If this was a straight-up Miranda violation where they could use the confession as impeachment if Mr. Lujan testified, and then you were sort of more limited to what was presented at the trial, taking out the confession and his testimony, you're right that it's much closer to second degree murder. It's not 100 percent because you still have these unusual facts that aren't explained of death by a cement and water main cover, which is just not – it reeks of impulsiveness and not anything – Well, you had prior stalking orders and was stalking her that night. And there had been much – It doesn't seem terribly impulsive to pick up a cement cover. That's not the kind of thing that one generally does impulsively. Well, it's not one that premeditates thinking I'm going to go out and kill somebody and I'm going to hope that there's a cement and water main cover nearby to do them. It's not like you're going out with a gun or a knife or all that. It is a much more difficult question if that was the only issue. But we have the secondary issue that was never addressed by the State court or the district court, that this confession was also involuntary. And if you factor that in, which allows the possibility that Mr. Lujan could be tried, they couldn't use his confession, he could testify, he could explain what he saw, what happened, how the murder happened, they could not use his confession as evidence, as impeachment. You then have a different trial where there's a possibility that you would have a voluntary manslaughter conviction. You have to remember, Mr. Lujan was tried twice, the first year he originally hung. This is a disturbing but factually not very heavy case. There's not a whole lot of evidence other than the stalking behavior and the one comment that Mr. Lujan said to his brother that he thought he had hurt Monica. There's no other evidence that ties him to this case. Now, does that mean there's not really any question that he was involved? Sure, absolutely. But our trials require more than just a hunch, and that's mostly likely, and he seems the most likely suspect. We do have proof beyond a reasonable doubt of all the elements of the crime. And whether you would find that intent to commit murder versus a voluntary manslaughter, Mr. Lujan has a right to that trial that he should have had had his rights not been tampered with. And for that reason, there's nothing to be lost by giving him the right to either a retrial or at least the opportunity to reduce it to a voluntary manslaughter as opposed to limiting it to a second-degree murder. We would have to find that it's just unreasonable or arbitrary for the district judge to recommend the second-degree murder option based on the record as to what happened. Because it's going to be a circumstantial case if he doesn't testify no matter what. It is. In my time, and I will reserve my last five seconds, is really that you can't look at the remedy without taking into account the involuntary confession argument that needs to be addressed before you get to the remedy. If there's no involuntary confession, and I think there was, but if there's no involuntary confession, then there's a possibility that there's a likelihood of finding him guilty of something less than second-degree murder. I think there's a possibility, but I couldn't say it's unreasonable that it would be a second-degree murder. But if you have the involuntary confession, then second-degree murder off the table because Mr. Lujan would have had the opportunity to testify without being impeached with his earlier confession. Thank you. Thank you, counsel. Thank you, Your Honor. Addressing the question of remedy, as the Court has recognized, the standard is abuse of discretion. And Judge Morrow, two facts, found two things in particular significant in fashioning a remedy. One, as a matter of law, and let's be clear. Let's set the factual background. The Court excluded the confession and excluded it from its consideration in the harmless error analysis. And as the Court has already recognized, if you don't have his confession, you don't have his defense, his heat of passion defense. All you have, and this is what the Court focused on, and this is a question of remedy, all you have is an unprovoked attack on two unarmed persons, which is, as a matter of California law, is, by law, second-degree murder. I don't understand Petitioner. You have to challenge that proposition. In addition, you have all of the surrounding facts. And I think Judge Morrow characterized it perfectly. He said what you have is an unprovoked attack which followed months of brooding jealousy of a estranged husband. That's what happened here. Do you know of any case which authorizes a court, upon finding a constitutional violation and granting a writ to, you know, as a, I don't want to say, not a condition, but as an alternative to the release of the prisoner, which is what a writ is for, to impose a conviction on a lesser-included offense? Is there any case that supports that? Yes. It's cited in my briefs. This Court has done exactly that. What case is that? Ordered release. It's cited in Judge... It doesn't involve imposing a conviction on a lesser-included offense. The second-degree murder was the terms of... It's in your what? Your which brief? Your third brief? That would be the third brief. I'm sorry. It's in our third brief, and it's cited by Judge Morrow. I would... We evoke Lafleur, which is actually the Supreme Court's first case where it emphasizes the discretion and the need to balance unfashionable and improper remedy. Harvest v. Castro. Harvest v. Castro, where this Court ordered a grant of the writ and a conditional writ on the condition that either release the defendant or reduce his conviction to one of second-degree murder. So this Court has done that very thing. Harvest v. Okay. I'll look at that. Thank you. In closing, I'd like to say the beauty of our constitutional design and federalism is that state and federal courts are co-equal partners in enforcing the Constitution. And under 2254d.1, that coexistence is in harmony so long as the state courts adopt reasonable constructions of clearly established law. That's what happened here. And the corollary of that proposition is that also that state and federal courts have 100 percent say in matters that are uniquely matters of their respective jurisdictions under state and federal law. And that as a result, they seek not to impose their own rules on the other sovereign's jurisdiction, which is unfortunately what the district court did in this case when it took a rule of purely and exclusively of federal law and imposed it on the state court in this case. And with that, we ask that the judgment of the district court be reversed. Thank you, Your Honor. Thank you. Mr. Ester, you used your time, but we took the state over its time, so I'll allow you another minute for rebuttal if you wish to use it. I'm satisfied. Okay. Thank you. We thank both counsel for the argument and the case will be submitted.
judges: Bencivengo, Tashima, Bybee